**Bill MORROW; Barry Keene; Bruce Henderson, Plaintiffs–Appellants,**

v.

**THE STATE BAR OF CALIFORNIA, a public corporation; Mel Assagai, Defendants–Appellees.**

No. 97–17008.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1999.

Decided Sept. 2, 1999.

Paul N. Halvonik, Berkeley, California and Fred J. Hiestand, Sacramento, California, for the plaintiffs-appellants.

James J. Brosnahan, Jr., Mark W. Danis, Morrison & Foerster, San Francisco, California, and Marie M. Moffat, Lawrence C. Yee, Dina E. Goldman, Office of General Counsel, The State Bar of California, San Francisco, California, for the defendants-appellees.

Before: SCHROEDER, FERNANDEZ, and SILVERMAN, Circuit Judges.

SCHROEDER, Circuit Judge:

Plaintiffs are members of the State Bar of California who object to political positions taken by the Bar. They contend that their freedom of association rights under the First Amendment are violated by their being forced to belong to an organization that publicly espouses views with which they disagree. Plaintiffs seek to enjoin the political activities of the Bar that are not germane to its regulatory functions, even though plaintiffs are not required to finance these political activities with their dues. The district court dismissed the complaint on the ground that the Supreme Court has upheld mandatory bar membership so long as members are not compelled to contribute to political activities. *See Keller v. State Bar of California*, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990); *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961). Plaintiffs appeal and we affirm.

## BACKGROUND

Plaintiffs are several current and former California public officials who belong to the State Bar of California. Plaintiff Bill Morrow represents California's 73rd assembly district; Barry Keene is a former state senator; and J. Bruce Henderson is a former member of the San Diego City Council. Defendants are the State Bar and Mel Assagai, a former executive officer of the State Bar who in 1996 was given a two-year contract as a lobbyist for the State Bar.

California maintains a unified bar. In a unified bar, regulatory functions (such as admission, continuing education, and attorney discipline) are combined with non-regulatory activities (such as arranging social functions, obtaining rental car discounts for members, and political lobbying) in a single organization in which membership is mandatory. More than half of the states have unified bars.

Plaintiffs disapprove of the California State Bar's political activities in support of four 1997 California bills. The bills would have raised the ceiling on pain and suffer-

ing damages in medical negligence cases, prohibited civil compromises in domestic violence cases, defined a state claim for a hostile work environment, and permitted state law claims for discrimination on the basis of sexual orientation.

Plaintiffs do not complain about how the State Bar spends their mandatory dues. In compliance with the Supreme Court's decision in *Keller*, the State Bar allows members to seek a refund of the proportion of their dues that the State Bar has spent on political activities unrelated to its regulatory function. *See id.*, 496 U.S. at 7, 110 S.Ct. 2228. Rather, plaintiffs complain that by virtue of their mandatory State Bar membership, they are associated in the public eye with viewpoints they do not in fact hold. This they contend violates their First Amendment rights to free association.

The district court dismissed the complaint for failure to state a claim. It ruled on the basis of the Supreme Court's decision in *Lathrop*, which upheld mandatory state bar membership in the face of similar objections. *See id.* The district court noted that plaintiffs are not compelled to endorse or financially support any position of the Bar. They are free to disagree publicly with the State Bar's political stances. The court also noted that in light of the huge size of the California Bar, the political positions of the Bar are unlikely to be attributed to all its individual members.

The plaintiffs appeal, contending the district court erred as a matter of law. We review de novo. *See Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995).

## DISCUSSION

The issue is whether plaintiffs' First Amendment rights are violated by their compulsory membership in a state bar association that conducts political activities beyond those for which mandatory financial support is justified. The Supreme Court has twice visited the question of bar membership.

In *Lathrop*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961), the Supreme Court held it constitutional to compel attorneys to contribute dues to a unified bar that conducts political activities. Lathrop, a Wisconsin attorney, sought a refund of his mandatory bar dues. He argued that he could not be compelled to join and support an organization that lobbied the legislature. *See id.* at 822, 828, 81 S.Ct. 1826. The Wisconsin Supreme Court held that compelled bar membership did not violate his rights of freedom of association or free speech. *See id.* at 823, 81 S.Ct. 1826. The Supreme Court affirmed without a majority opinion. A majority of the Justices, however, agreed that mandatory paid membership in the bar did not violate freedom of association. Four of the six votes reaching that conclusion were expressed in the plurality opinion of Chief Justice Warren and Justices Brennan, Clark, and Stewart. In their view, given that the only action Lathrop was compelled to take was the payment of dues, and, further, that the bulk of the State Bar's activities were non-political, there was no impingement on Lathrop's right of free association. *See id.* at 843, 81 S.Ct. 1826. The other two votes came from Justices Harlan and Frankfurter, who stated unequivocally in their concurrence that "a State may Constitutionally condition the right to practice law upon membership in an integrated bar association." *Id.* at 849, 81 S.Ct. 1826.

A majority of the Court in *Lathrop* was unable to agree on whether the use of mandatory dues to support political or ideological activities by the Wisconsin Bar would violate Lathrop's First Amendment rights. *See id.* at 844, 81 S.Ct. 1826. The Supreme Court addressed this question in *Keller v. State Bar of California*, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). It held that the California State Bar could not use mandatory dues to fund "activities of an ideological nature" that were not germane to "regulating the legal profession and improving the quality of legal services." *Id.* at 16, 110 S.Ct. 2228. The Court reasoned that compelling contributions to an organization for political purposes violated free speech just as much as prohibiting contributions to political organizations. *See id.* at 9–10, 110 S.Ct. 2228.

The Court drew its distinction between regulatory and ideological activities from a line of labor union cases. The most important of those cases, *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), held that Michigan could compel state employees who did not belong to the employees union to contribute money to the union only to the extent the money was spent on "collective-bargaining, contract administration, and grievance-adjustment purposes." *Id.* at 232, 97 S.Ct. 1782. Mandatory contributions could not be spent on "political and ideological purposes unrelated to collective bargaining." *Id.; see also Ellis v. Brotherhood of Ry. Airline and S.S. Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

Plaintiffs stress that the Court recognized in *Ellis* that mandatory assessments by a labor union constitute a significant intrusion on First Amendment rights that can be justified only by compelling state interests. Plaintiffs contend no such interests justify mandatory bar memberships. The difficulty with this argument is that the Court decided *Keller* after *Ellis* and *Abood*. On the question of mandatory bar membership, the issue presented here, *Keller* reaffirmed *Lathrop*'s holding that "lawyers admitted to practice in the State may be required to join and pay dues to the State Bar." *Keller*, 496 U.S. at 4, 110 S.Ct. 2228.

The plaintiffs in this case do not contend that mandatory bar membership restricts, directly or indirectly, their ability to express their own views or to disagree with the positions of the Bar. Nor do they contend that membership compels them to express any particular ideas or make any particular utterances of any kind. This case is thus unlike *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), in which the Supreme Court held that a citizen cannot be compelled to dis-

play the New Hampshire state motto, "Live Free or Die," on a license plate. *See id.* at 714, 97 S.Ct. 1428. Also unavailing is plaintiffs' reliance on *Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.,* 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986) in which the Court overturned a California regulation requiring a privately owned utility to include in some of its bill mailings a letter from a private consumer group. Here none of plaintiffs' property, i.e. their dues, is being used to espouse views with which plaintiffs disagree.

Plaintiffs nevertheless contend that language in *Keller* leaves open the question whether membership alone may cause the public to identify plaintiffs with State Bar positions in violation of plaintiffs' First Amendment rights. It is difficult for us to accept plaintiffs' interpretation of this passage since the Court in *Keller* reaffirmed *Lathrop* on this very point. *See Keller,* 496 U.S. at 4, 110 S.Ct. 2228. The language on which plaintiffs rely states:

> In addition to their claim for relief based on [the California Bar's] use of their mandatory dues, petitioners' complaint also requested an injunction prohibiting the State Bar from using its name to advance political and ideological causes or beliefs. This request for relief appears to implicate a much broader freedom of association claim than was at issue in *Lathrop.* Petitioners challenge not only their "compelled financial support of group activities," but urge that they cannot be compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory financial support is justified under the principles of *Lathrop* and *Abood.* The California courts did not address this claim, and we decline to do so in the first instance.

*Id.* at 17, 110 S.Ct. 2228 (internal cross-references omitted). The claim reserved in *Keller* was a broader claim of violation of associational rights than was at issue in either *Lathrop* or in this case. Here, plaintiffs do not allege that they are compelled to associate in any way with the California State Bar's political activities.

They do not allege that the Bar's political involvement is greater and the regulatory function less than it was when the Court decided *Keller* and *Lathrop.* The claim they make is therefore no broader than that in *Lathrop,* where the court held the regulatory function of the bar justified compelled membership. *Lathrop* controls our decision here.

The judgment of the district court is AFFIRMED.